# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS
### SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **RASHAD DEVOE,** | ) | Case No. _____ |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **PLAINTIFF'S** |
| **TRUSTEES OF AMHERST** | ) | **COMPLAINT** |
| **COLLEGE d/b/a** | ) | |
| **AMHERST COLLEGE,** | ) | |
| **DR. CATHERINE EPSTEIN,** | ) | |
| **DON FAULSTICK, and DOES 1** | ) | |
| **THROUGH 25, inclusive,** | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |
| | ) | |

Plaintiff Rashad Devoe ("Coach Devoe" or "Plaintiff"), by and through his attorneys Munck Wilson Mandala, LLP (*pro hac vice* forthcoming) and Nesenoff & Miltenberg, LLP, files this Complaint against Trustees of Amherst College d/b/a Amherst College ("Amherst College" or the "College"), Dr. Catherine Epstein, and Don Faulstick (collectively "Defendants"), and Does 1 through 25, inclusive, as follows:

## I.     **INTRODUCTION**

1.     This case involves racism and discrimination at an elite school—Amherst College—a perennial top-10 Ranked liberal arts college in the United States.

2.     Rashad Devoe was not looking for a new job when Amherst College approached him about returning to coach in the New England Small College Athletic Conference ("NESCAC"). He was content as the Head Coach at Hampton University, a member of the

historically black colleges and universities ("HBCU"), with the challenge of building a National Collegiate Athletic Association ("NCAA") Division I Men's Lacrosse program.

3.     But Amherst College was facing, among other things, various race-related incidents involving its nationally ranked NCAA Division III Men's Lacrosse Team. Most recently, some less-than-exceptional young men on the lacrosse team were accused of homophobia, antisemitism, and racism. The team culture was such that three white lacrosse players felt comfortable chanting "N*gger! N*gger! N*gger! Goodnight, N*gger!" outside the black lacrosse player's dorm room. This pervasive repugnant behavior was tolerated during the team's unprecedented winning streak—until it became national news.

4.     Amherst College terminated the lacrosse team's men's head coach and needed a new head coach to step into the breach. This was going to be a tough task for any coach, but especially for a black coach in a sport dominated by white players, coaches, and athletic directors.

5.     Amherst College has had a history of wavering and ineffective responses to discriminatory, intolerant, and repugnant behavior, ignoring, trying to silence, or even punishing the victim for daring to complain, and conducting skewed investigations, while handling the perpetrators (and their parent donors) with a velvet glove. Bold pronouncements by Amherst College, without the resolve and commitment to carry through, are but a subterfuge and—in any event—of little value in fighting racism, misogyny, sexual violence, antisemitism, and homophobia. Hollow threats do not cure a culture where three white lacrosse players felt comfortable chanting "N*gger! N*gger! N*gger! Goodnight, N*gger!" outside the black lacrosse player's dorm room.

6.     With growing national attention, Amherst College decided (ostensibly) to act. Based on what ultimately was discovered to be false motives, representations, and promises,

Amherst College lured Coach Devoe, one of a few black lacrosse coaches, to become Head Coach of its men's lacrosse program—under a fabricated ruse of championing a movement toward human decency.

7.      Amherst College promised to fully support Coach Devoe and his staff in trying to change the racist and, frankly, elitist demeanor that had historically permeated the College's lacrosse program. Coach Devoe relied on Amherst College's representations and promises, including to fully support Coach Devoe in trying to accomplish the mission of rebuilding the team and curing the racist culture that had pervaded its lacrosse program.

8.      So, Coach Devoe moved his wife of many years and their young son to Massachusetts and became the Head Coach of Amherst College's Men's Lacrosse Team.

9.      Unfortunately, when push came to shove, the College's true color broke through the smoke and mirrors. Instead of targeting and trying to cure the cancer that had spread throughout the program, Amherst College targeted Coach Devoe. Despite its promise to stay on mission, Amherst College resumed the course and exhibited the same lack of resolve that led to the situation Amherst College hired Coach Devoe to fix.

10.     Amherst College ignored and tried to silence Coach Devoe, undermining, retaliating against, and punishing him for following NCAA, NESCAC, and Amherst College rules and the instructions given to him.

11.     Among other things, Amherst College conducted a skewed investigation that, according to the investigators, absolved Coach Devoe of any wrongdoing. Instead of being exonerated, however, Amherst College stripped Coach Devoe of his credibility and authority as a Head Coach, and ultimately fired him—despite knowing that Coach Devoe suffered serious

physical and emotional damages from the circumstances created, and arguably encouraged, by Amherst College.

12.     Despite the betrayal, Coach Devoe asked Amherst College to let him continue the College's mission with its full support—as Amherst College originally had promised him. This, the College decided it would not do.

13.     Amherst College has caused Coach Devoe substantial damages, mental anguish, pain, and suffering. The trier of fact should make Amherst College answer for its wrongful acts and omissions.[1]

## II.     <u>PARTIES</u>

14.     Plaintiff, Rashad Devoe is an individual who resides in Longmeadow, Massachusetts, and was formally the Head Coach of Amherst College's Men's Lacrosse Team.

15.     Defendant, Trustees of Amherst College d/b/a Amherst College ("Amherst College"), represents a federally funded, private liberal arts college in Amherst, Massachusetts. Amherst College is located at 220 South Pleasant Street, Amherst, MA 01002.

16.     Defendant, Dr. Catherine Epstein, is Amherst College's Provost and Dean of the Faculty ("Provost Epstein").

17.     Defendant, Don Faulstick, is Amherst College's Athletic Director ("Faulstick").

18.     Despite the use of investigative techniques, Plaintiff is not aware of the true names, identities, or capacities of the defendants sued herein as Does 1 through 25, inclusive, and therefore sues said defendants by such fictitious names. Plaintiff is informed and believes that, at various relevant times, said Doe defendants participated in, or otherwise were in some manner responsible

---

[1] Coach Devoe is also filing charges of employment discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Massachusetts Commission Against Discrimination ("MCAD"), and intends to amend the Complaint to include relevant federal and state claims once he receives a Notice of Right to Sue.

for the harm that arose from the facts and occurrences alleged in this Complaint. Plaintiff believes that information obtained in discovery will lead to the identification of each defendant's true name and permit the Plaintiff to amend this Complaint to state the same. Plaintiff will seek leave of Court to amend this complaint to state the true names of the fictitiously named defendants once they are discovered.

## III.   <u>JURISDICTION AND VENUE</u>

19.    This action involves claims, individually or alternatively pled, for violations of 42 U.S.C. § 1981, fraud, negligent misrepresentation, intentional infliction of emotional distress, negligent infliction of emotional distress, breach of contract, breach of the covenant of good faith and fair dealing, estoppel, violation of right of publicity, civil conspiracy and/or aiding and abetting, and negligence. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367 because: (i) the federal law claim arises under the Constitution and statutes of the United States, and (2) the state law claims are so closely related to the federal law claim as to form the same case or controversy under Article III of the United States Constitution.

20.    Amherst College is subject to this Court's specific and general personal jurisdiction. Amherst College is located in Massachusetts and does continuous and systematic business in Massachusetts. In addition or the alternative, Coach Devoe's injuries arise out of Amherst College's contacts with Massachusetts. For example, Amherst College breached its promises and representations to Coach Devoe, and Coach Devoe was discriminated against and retaliated against by Amherst College, in Massachusetts.

21.    Venue is proper in this district under 28 U.S.C. § 1391(b). Among other things, Amherst College is a private liberal arts college located in Amherst, Massachusetts. Further, from and within this district, Amherst College has committed all or a substantial part of the events giving rise to this action.

# IV.   STATEMENT OF FACTS

## A.   Amherst College's Historical Intolerance

22.     Amherst College, which receives federal funds, has a history of countenancing, improperly responding to, and failing to act or effectively address, racism, misogyny, sexual violence, anti-Semitism, and homophobia. Where it would be appropriate to support the victims of such abuse and punish the perpetrators, Amherst College has a pattern of turning a blind eye to the endemic problem, silencing, or even punishing the victim, and at times placating or "slapping on the wrist" of the bad actors, until the incidents become public. Only then, on occasion, Amherst College will make some pronouncements of intent to change, as a subterfuge, without truly having the resolve and commitment to carry through.

23.     For example, in 2011 and 2012, there were several documented rapes on campus. Amherst College responded with a lack of concern highlighted by its administration's reported response that "***boys will be boy***s" when an Amherst College fraternity made t-shirts showing a "[c]artoon woman beaten, bound, and spit roasted over a fire."[2]

---

[2] Epifano, Angie, "An Account of Sexual Assault at Amherst College," *Amherst Student*, October 17, 2012. https://amherststudent.amherst.edu/article/2012/10/17/account-sexual-assault-amherst-college-page=3.html Lennard, Natasha, "Burgeoning rape scandal at Amherst," *Salon*, October 19, 2012, https://www.salon.com/2012/10/19/damning_light_shone_on_rape_at_amherst/; Myers, Alexis, "A Personal Letter to President Martin," *The Amherst Student*, October 24, 2012; McGuinness, William, "Amherst College Student's Suicide Note Points Blame At School Administration For Mishandling Sexual Assault," *HuffPost*, November 8, 2012; Flynn, Jack, "Late Amherst College student Trey Malone's sexual assault case never reported to Northwestern District Attorney's office, officials say," *MassLive*, November 14, 2012 (emphasis added).



24.     In February 2011, when a female Mount Holyoke College student was raped on Amherst College's campus, Amherst College focused its investigation on whether the victim manufactured her story—not on whether a sexual predator roamed Amherst College's campus.[4]

25.     In September 2011, a male Amherst College student was raped by another Amherst College student, but Amherst College refused to take the matter seriously.[5] Before the victim killed himself by jumping off the Tampa Sunshine Skyway Bridge, he specifically cited Amherst College's treatment of him after he reported the rape in his suicide note. It was later reported that Amherst College did not even bother to report the rape to local authorities, who could have investigated if Amherst College had a predator on its campus.[6] After public scrutiny, President Martin reportedly promised that Amherst College would improve its response to sexual violence on campus. This promise rang hollow in substance and practice.

26.     Again, in 2012, after a female student reported she was raped by a male student, Amherst College told her that pressing charges against the rapist would be useless because the alleged attacker would soon graduate and there would be little Amherst College could do.[7]

---

[3] Kingkade, Tyler, "Amherst, Vanderbilt Accused Of Botching Sexual Assault Complaints," *HuffPost*, November 14, 2013.
[4] https://web.archive.org/web/20181125210130/http://amherststudent.amherst.edu/?q=article/2012/10/24/personal-letter-president-martin
[5] https://www.huffpost.com/entry/amherst-college-student-suicide-note_n_2095386
[6] https://www.masslive.com/news/2012/11/the_northwest_district_attorne.html
[7] https://amherststudent.amherst.edu/article/2012/10/17/account-sexual-assault-amherst-college-page=3.html

Amherst College reportedly questioned whether the alleged victim was sure she was raped and then forcefully committed her to a psychiatric ward at Cooley Dickinson Hospital for five days.[8] The alleged rapist graduated with no repercussions or investigation into the rape.[9]

27.     In 2012, Amherst College allowed a poster making light of Lord Jeffrey Amherst's genocide of American Indians—which occurred when he gifted a stack of blankets infected with smallpox to the Indians—on a biology classroom wall for many months until a Native American student wrote a scathing letter to the biology department.[10] That same year, Amherst College's newsletter, "The Indicator," ran a cartoon, entitled "Housing Crisis Solution: Lord Jeff Approved," showing three teepees in a clearing to depict the housing shortage.[11]

28.     In 2014, a federal investigation into mishandling of sexual abuse complaints named Amherst College amongst a group of 55 colleges, *out of 5,300*, to be investigated.[12]

29.     In 2015, a former Amherst College lecturer accused a former Amherst College professor of encouraging lecturers and teaching assistants to go to student parties and sleep with students in order to increase Spanish-class enrollment.[13]

30.     Beginning on November 12, 2015, Amherst College students led protests and sit-ins, called the "Amherst Uprising", to address pervasive anti-black racism.[14] The movement

---

[8] http://www.nytimes.com/2012/10/27/education/amherst-account-of-rape-brings-tension-to-forefront.html?pagewanted=all&_r=0
https://www.bostonglobe.com/metro/2013/11/16/students-file-federal-complaint-against-amherst-college-alleging-mishandling-sexual-assaults/cxRn6t3sWaGKOVBK3hbg5N/story.html
[9] https://amherststudent.amherst.edu/article/2012/10/17/account-sexual-assault-amherst-college-page=3.html
[10] Landry, Alysa, "More Racism at Amherst College, Native Student Speaks Out," *Indian Country Today*, September 13, 2018. https://indiancountrytoday.com/archive/more-racism-at-amherst-college-native-student-speaks-out?redir=1
[11] *Id*.
[12] Anderson, Nick, "55 colleges under Title IX probe for handling of sexual violence and harassment claims," *The Washington Post*, May 1, 2014.
[13] Siemaszko, Corky, "Prof Claims Amherst College Used Sex to Sell Students on Spanish Class," *NBC News*, December 31, 2015. https://www.nbcnews.com/news/us-news/prof-claims-amherst-college-used-sex-sell-students-spanish-class-n488521
[14] https://amherstuprising.org/.

expanded to address sexism, homophobia, transphobia, xenophobia, antisemitism, ableism, classism, and the stigmatization of mental health, all rampant on Amherst College's campus.[15]

31.     In 2016, a newsletter article reported that Amherst College's men's cross-country team sent a series of racist, misogynist, and homophobic emails about female students from 2013 to 2015 to new teammates to welcome them and introduce them to the culture of the team.[16] The emails referred to female students as "meat slabs" or "a walking STD."[17]

32.     In 2017, someone tied and left a noose on the Amherst College football field. In a letter dated September 10, 2017, Amherst College *asked* students, faculty, and staff to look inward and make changes: "I call on every member of our community to join me in condemning it and in standing with those directly targeted by an act of this kind. . . I encourage you to examine your beliefs, values, and choices, and actively demonstrate your commitment to building the inclusive culture every student has been promised." But, as usual, the pronouncement rang hollow in substance and practice.

33.     In December 2018, members of the Amherst College Men's Lacrosse Team drew a penis and a Swastika, among other images, on the face of an unconscious Jewish student and disseminated pictures and videos of the incident on social media.[18] Three months after the incident, it appeared that the lacrosse players faced no real consequences—although three players **may** have been merely suspended for two games.[19] On the other hand, the witnesses of the incident were so

---

[15] https://amherstuprising.org/.
[16] "Cross-country team apologies for lewd comments about women," *CBS News*, December 13, 2015. https://www.cbsnews.com/news/amherst-college-cross-country-team-apologizes-for-misogynistic-lewd-comments-about-women/
[17] *Id*.
[18] Chen, Shawna, "Members of Men's Lax Involved in Anti-Semitic Incident," *The Amherst Student*, March 27, 2019. https://issuu.com/amherststudent/docs/issue_18_9037ab71b40252
[19] *Id*.

afraid of backlash or retribution from the team that they reportedly would only discuss the incident anonymously.[20]

34.     On April 11, 2019, in a letter to the members of the Amherst College community, President Martin asked "everyone to do your part to create the conditions that make it possible to think and to learn, not only about rights and wrongs, essential though those thoughts are, but also about how we create a livable world in our relationships with one another."[21]

35.     But this pronouncement again rang hollow in substance and practice.

**B.     "N\*gger! N\*gger! N\*gger! Goodnight, N\*gger!"**

36.     It is no secret that lacrosse is a primarily a "rich, white kid sport" and that it has very few black players or coaches.[22] For example, in 2019, only three percent of college lacrosse head coaches were black.



[23]

37.     On March 7, 2020, three white Amherst College lacrosse players, and other white students, threatened and chanted "N\*gger! N\*gger! N\*gger! Goodnight, N\*gger!" outside of a

---

[20] *Id.*
[21] Catherine Epstein, Amherst's Provost and Dean of Faculty, also reported that the Lacrosse team exchanged GroupMe messages denigrating and ridiculing gender-nonconforming and trans staff.
[22] Demling, Tanner, "How Can Lacrosse Become More Diverse Among The College Coaching Ranks?," *Lacrosse Bucket*, July 10, 2020, https://lacrossebucket.com/2020/07/10/how-can-lacrosse-become-more-diverse-among-the-coaching-ranks/.
[23] *Id.*

black lacrosse player's dorm room. The white players received no immediate punishment. Amherst College did, however, expel the black player when he punched one of the white chanting players.[24]

38.    After the story gained national media coverage, Amherst College retracted the expulsion and forced the black student to take anger management training before he could graduate.

39.    Although Amherst College fired the then-head lacrosse coach, it still failed to punish the white players. The Black Student Union directly called out Amherst College's administration's role "*played in the perpetuation of a threatening, racist environment at Amherst*."[25] The Council of Amherst College Student Athletes of Color also called "on administrators to work in conjunction with the athletic department to create and facilitate comprehensive, educational diversity and inclusion training in which all teams and coaches are proactively required to participate."[26]

40.    Amherst College then embarked on a campaign to recruit a new lacrosse coach to ostensibly accomplish the mission of rebuilding the team and curing the racist culture that had permeated its lacrosse program. Although Amherst College interviewed three black coaches, the school set its sights on Coach Devoe, the Head Coach of the Men's Lacrosse Team at Division I Hampton University in Virginia. Within a two-month period, Amherst College also recruited three other black coaches, Marlon Sears (men's basketball), Busani Xaba (men's and women's squash), and Valerie Jones (volleyball).[27]

---

[24] Black Student Union, "Amherst College Is Ill-Equipped to Handle Racist Violence and Threats of Racist Violence," *The Amherst Student*, March 12, 2020.
[25] *Id* (emphasis added).
[26] "CACSAC Call to Action," The Amherst Student, April 3, 2020.
[27] Ainsworth, Chris, "Keeping Score: One year later, Amherst College lacrosse situation still unsettled," *Greenfield Recorder*, March 5, 2021.

41.     Upon information and belief, Amherst College did not actually want to hire such black coaches, but did so only to give the appearance of addressing the college's history of systemic racism.

42.     Coach Devoe had 20 years of collegiate, professional, and college-preparatory coaching experience, and had coached and mentored at least seven All-Americans, 29 All-Conference selections, and two conference Rookies of the Year, including the 2015 NESCAC Rookie of the Year. Coach Devoe was named the 2017 Midwest Lacrosse Conference Coach of the Year after guiding Beloit (Wisc.) College to its first double digit-win season in the program's history and winning the regular season conference title. In addition, Coach Devoe helped lead Jesuit College Preparatory School of Dallas to its first-ever national ranking for a Texas high school lacrosse program.

43.     In sum, Coach Devoe was more than qualified to lead Amherst College's Division III lacrosse team.

44.     Amherst College requested that Coach Devoe interview for its head lacrosse coach position, but Coach Devoe initially declined.[28] So Amherst College began making a hard push to recruit Coach Devoe.

45.     On April 21, 2020, Faulstick, Amherst College's Athletic Director, represented during a telephone call with Coach Devoe that Amherst College wanted Coach Devoe to, among other things: (1) change the "frat-like" culture of its program; (2) integrate the team with more well-rounded students that "fit the campus better;" and (3) recruit students of color. Moreover, Faulstick promised that Amherst College would provide Coach Devoe with the resources and support he needed to accomplish these goals.

---

[28] While Coach Devoe declined the interviews, he did submit his application to Amherst College for the position.

46.     Over the next month, during a series of conversations, Amherst College continued to promise and represent to Coach Devoe that he would have the school's full support to accomplish the mission of rebuilding the team and curing the racist culture and elitism that had permeated its lacrosse program.

47.     For example, on May 2, 2020, Faulstick called Coach Devoe and reiterated that Amherst College seriously intended to change the culture of the lacrosse program.

48.     On May 6, 2020, President Martin told Coach Devoe that Amherst College wanted to recruit more diverse players and instill values into the men's lacrosse program that would prevent the negative incidents from the past.

49.     President Martin promised Coach Devoe that he would have the full support of Amherst College to change the culture of the team and, thereby, accomplish the mission.

50.     Moreover, Dr. Austin Sarat, Amherst College's Associate Provost, told Coach Devoe that he would need to clean-up the men's lacrosse program because the players refused to accept other cultures and were insular.

51.     On May 19, 2020, Provost Epstein interviewed Coach Devoe and represented that she would fully support Coach Devoe to change the culture of the lacrosse program and, thereby, accomplish the mission of rebuilding the team and curing the racist culture that had permeated its lacrosse program.

52.     On May 22, 2020, through email and a phone call, Faulstick again confirmed to Coach Devoe that, if Coach Devoe took the head coach position, Coach Devoe could hire his own coaching staff.

53.     At the time of Amherst College's promises and representations, Coach Devoe was content as Hampton University's Division I lacrosse coach, where he made more money, was in

an inclusive environment, and received more notoriety. But Coach Devoe was passionate about the mission for which he (supposedly) was being hired.

54.     Therefore, on May 22, 2020, based on Amherst College's promises and representations, Coach Devoe accepted the head coach position, executed a three-year contract, and began the process of moving his family to Massachusetts.

55.     In their written agreement dated May 22, 2020, among other things, Amherst College agreed that Coach Devoe would take on the position of Head Coach of Men's Lacrosse and Physical Education Instructor at Amherst College, where his appointment began on June 1, 2020, with an initial annual salary of $90,000, $375 per month for a housing subsidy, and eligibility for $1,500 in annual travel and professional development support and extended through June 30, 2023. Pending positive reappointments in the Spring 2023, Spring 2026, and Spring 2029, Coach Devoe would be promoted to Senior Coach status on July 1, 2032.

56.     Of note, Amherst College's Staff Handbook has policies, procedures, and guidelines that protect the College's employees from harassment, retaliation, and respect for persons. These policies were in effect before and during the 2020-2021 academic year. Among other things, Amherst College's policies provided:

> (a) ***Harassment***: Amherst College does not condone harassment of any kind, against any group or individual, because of race, color, religion, national origin, pregnancy and genetic testing, ethnic identification, age, disability, gender, sexual orientation, or gender identity. . . .

> (b) ***Protection from Retaliation***: An employee who in good faith reports a suspected violation of law or College policy shall not suffer harassment, retaliation or adverse employment consequence from other employees or the College. An employee who retaliates against someone who has reported a suspected violation in good faith is subject to discipline up to and including termination of employment. Any employee who believes that he/she has been retaliated against after making a good faith report may report this alleged retaliation to the Chief Human Resources Officer or Treasurer.

(c) **Respect for Persons**: Respect for the rights, dignity and integrity of others is essential for the well being of a community. Actions by any person that do not reflect such respect for others are damaging to each member of the community and hence damaging to Amherst College. Each member of the community should be free from interference, intimidation or disparagement in the work place, the classroom and the social, recreational and residential environment.

57.     Amherst College and each of the individual Defendants purposefully failed to inform Coach Devoe of the full extent of the sexist, racist, homophobic, anti-Semitic, and elitist events that had taken place at Amherst College at the time they induced Coach Devoe to be their Head Men's Lacrosse Coach. Furthermore, among other things, they broke their promises and/or falsely represented Amherst College's, and their own, full support for Coach Devoe's charge to change the sexist, racist, homophobic, anti-Semitic, and elitist culture that permeated the school. Had Coach Devoe known the truth, he would have happily stayed in Virginia.

**C.     After Duping Coach Devoe To Accept The Position, Amherst College Uses Coach Devoe's Name and Image To Try And Resurrect Its Own, Tarnished Reputation.**

58.     On June 18, 2020, through a Zoom town hall meeting, President Martin announced that the lacrosse program had been strengthened by the hiring of Coach Devoe, and the team was meeting with Coach Devoe to become better educated in the norms that are essential to human decency.

59.     Amherst College began posting Coach Devoe's image and name on its website apparently as evidence of its reforms. For example, Amherst College published the banner below and various public relations documents on its website.[29]

---

[29] "Rashad Devoe Is Named Head Coach of Men's Lacrosse at Amherst College," May 25, 2020, https://athletics.amherst.edu/news/2020/5/25/5_25_2020_4544.aspx?print=true; "Rashad Devoe - Head Coach - Men's Lacrosse Coaches - Amherst College,"
https://athletics.amherst.edu/sports/mens-lacrosse/roster/coaches/rashad-devoe/441.



60.     Amherst College publicized Coach Devoe's name and image as the new face of its Men's Lacrosse Team in an effort to clean up the school's reputation, attract more students, and sell more tuition to paying students.

**D.     Amherst College's True Color Breaks Through the Smoke and Mirrors.**

61.     Coach Devoe relied on Defendants' promises and representations that they would fully support Coach Devoe's efforts and decisions related to the mission for which he was hired. However, it later became clear that Amherst College had no real intention to comply with its promises or change its ways, and did not have the desire, commitment, or resolve to take the necessary actions to accomplish the mission—nor did the individual Defendants.

62.     In 2020, lacrosse players were forbidden from practicing by a school-mandated probation. Among other things, Amherst College operated under COVID protocols, and NESCAC rules and NCAA safety regulations required medical staff on site during practices. Members of the Amherst College administration and athletic directors sent Coach Devoe numerous instructions to enforce the rules on the lacrosse players. For example:

(a)  During the interview process and after the hiring of Coach Devoe, Amherst informed Devoe about its prohibition of lacrosse practices. Specifically, on March 30, 2020, President Martin in her message to the Amherst College community stated that the lacrosse ***"[t]eam is prohibited from engaging in formal team gatherings prior to November 1, 2020. This includes, but is not***

*limited to, captains' practices and team-bonding activities."*[30] And the continuation of the prohibition would be reevaluated by President Martin "at the conclusion of the Spring 2021 season" to determine if the prohibition was necessary for additional seasons.[31]

(b) On August 11, 2020, Greg DiNardo ("DiNardo"), Amherst College's Associate Athletic Director, emailed Coach Devoe and the other head athletic coaches of Amherst College that "*[t]here cannot [] be any captains practices.* The reason why Presidents voted to add the nontraditional season and early start date for winter sports was to ensure that all athletic related activities were supervised. *Coaches need to make sure that their team understands this.*"[32]

(c) On August 13, 2020, Faulstick warned Coach Devoe by email that "*[i]ndividual poor decisions may affect your individual team* and perhaps even the fall athletic experience as a whole. Please adhere to the College's policies regarding masking, physical distancing, and all of the other safety measures and protocols that are in place to *'Protect the Herd.'*"[33]

(d) On August 19, 2020, Faulstick emailed Coach Devoe reminders that student athletes must adhere to Amherst College's COVID-19 policies. Faulstick stated "*[n]o captain practices are allowed for club and varsity athletes.* There cannot be any groups of athletes working together without supervision."[34] Faulstick concluded by stating: "[w]e need to be vigilant in making sure we're doing all we can *to make sure our student's know our expectations*."[35]

(e) On August 25, 2020, Faulstick emailed the Amherst College coaches and Coach Devoe that there have been students working out in groups and not following the restrictions and guidelines established by Amherst College. Further, Faulstick reiterated that the players *"cannot have captain's practices or workout in groups unsupervised."*[36] He stated that he worries "[a]bout *an attitude of 'privilege' by some students*. Perhaps in their HS, athletes were held to a different standard. *This is an opportunity to break that down and be part of the community, not above it. Perception is reality."*[37]

---

[30] Biddy Martin, *Message to the Community Regarding Men's Lacrosse*, (March 20, 2020) (emphasis added), https://www.amherst.edu/amherst-story/president/statements/node/767582

[31] *Id.*

[32] E-mail from Greg DiNardo, Assoc. Athletic Dir., Amherst College, to Rashad Devoe and Amherst College Athletic Staff (August 11, 2020, 11:01 AM EST) (emphasis added).

[33] Email from Don Faulstick, Athletic Dir., Amherst College, to Rashad Devoe (August 13, 2020, 11:18 PM CDT) (emphasis added).

[34] Email from Don Faulstick, Athletic Dir., Amherst College, to Rashad Devoe (August 19, 2020, 06:18 PM CDT) (emphasis added).

[35] *Id.* (emphasis added).

[36] Email from Don Faulstick, Athletic Dir., Amherst College, to Rashad Devoe (August 25, 2020, 07:43 AM) (emphasis added).

[37] *Id.* (emphasis added)

(f) On September 5, 2020, Faulstick emailed Coach Devoe and members of the Amherst College Athletic Department that the COVID-19 expectations are very serious and the easiest way to get compliance is to ***"[s]tart suspending kids from practice and reporting them to OSA."***[38] Further, Faulstick added that ***"[t]he 'GAME' is on the line**. We can either outlast our opponent, **take a shortcut or loose our focus and risk losing the whole semester and even the year. It's a choice!"***[39] Lastly, Faulstick reiterated again to the Amherst College coaches and Coach Devoe to ***"[r]emind your students that being on a team and on campus is a privilege, but doesn't make THEM PRIVILEGED."***[40]

(g) On October 2, 2020, Maria Rello ("Rello"), Amherst College's Senior Women Administrator, emailed Coach Devoe and members of the Amherst College Athletic Department that players must abide by the rules of Amherst College for their safety.[41] Rello further adds that the Amherst coaches are ***"[r]esponsible for the health and safety of everyone involved . . . we need to insist that students abide by all the rules all the time in our house."***[42]

63.    The student athletes were made aware of these rules repeatedly.

64.    Unfortunately, when push came to shove, the college's true color broke through. Instead of targeting and curing the problems, Amherst College targeted Coach Devoe. Despite its promise to stay on mission, Amherst College resumed the course and lack of resolve that led to the situation Amherst College hired Coach Devoe to fix. And so, in concert, did the individual defendants.

65.    For example, on October 17, 2020, Billy McBride ("McBride"), Amherst College's Assistant Athletic Director, called Coach Devoe to alert Coach Devoe about an unauthorized and illegal lacrosse practice, involving six lacrosse players, which was in direct contravention to the rules and regulations Coach Devoe was instructed to enforce. To protect the players, the lacrosse

---

[38]  Email from Don Faulstick, Athletic Dir., Amherst College, to Rashad Devoe (September 5, 2020, 09:40 AM CDT).
[39] *Id*. (emphasis added).
[40] *Id*. (emphasis added).
[41] Email from Maria Rello, Senior Women's Administrator, Amherst College, to Rashad Devoe (October 2, 2020, 03:58 PM).
[42] *Id*. (emphasis added).

program, and the school, Coach Devoe (who was miles from the campus) immediately called the players and told them to cease the unauthorized and illegal practice.

66.     On October 19, 2020, Coach Devoe met with the players to explain that unauthorized and illegal practices could jeopardize the entire lacrosse program and their own health. He instructed that no further unauthorized practices would be tolerated.

67.     Incredibly however, on October 20, 2020, Faulstick told Coach Devoe during several phone conversations that Coach Devoe should not discipline the lacrosse players for breaking the rules forbidding practice, and not raise concerns over Amherst College's past racial incidents.

68.     Similar to the experiences of Amherst College's previous victims, Coach Devoe then became the victim of Amherst College's cozy relationship with elitism, discrimination, and racism.

69.     The players began complaining to their parents and lashing out at Coach Devoe over social media because he had warned them about the consequences of breaking the rules.

70.     The players and their parents posted threats to Coach Devoe's safety and insults about Coach Devoe and the lacrosse program on social media. They questioned Coach Devoe's ability to coach, his right to be at Amherst College, and even his character.

71.     After Coach Devoe reported the threats against his safety and aspersions to Faulstick and Amherst College's administration, Amherst College conducted a cursory investigation—but did nothing to protect Coach Devoe.

72.     Turning it up a notch, in an apparently concerted effort, some of the players—who included players involved in prior incidents for which Coach Devoe was hired to correct—then

threatened withdrawing from Amherst College. One actually did. Their parents tacked on too and, among other things, threatened to withdraw financial support.

73.     Back to its pattern and practice, Amherst College essentially treated Coach Devoe (the victim) as the presumptive culprit. Indeed, Amherst College told Coach Devoe to ignore the threats against him and the program, not to engage, and not to defend himself.

74.     On October 23, 2020, Coach Devoe reported to Provost Epstein and another Amherst administrator, over a Zoom call, that he was suffering emotional distress due to the circumstances.

75.     Nonetheless, in cahoots with Provost Epstein, Faulstick, and others, Amherst College still jumped to the players' defense. On October 24, 2020, Faulstick sent a letter of support to the lacrosse team letting them know the school supported them, but the letter failed to condemn the unauthorized and illegal practice—undermining Coach Devoe's credibility and authority. To date, Faulstick, Provost Epstein, and Amherst College have not acknowledged that the players violated the rules.

76.     On October 25, 2020, Amherst College's Associate Athletic Director, Greg DiNardo ("DiNardo"), notified Coach Devoe that he was cancelling the virtual fundraiser with the alumni for the lacrosse team. Coach Devoe was not able to take part in the fundraising event. Faulstick and DiNardo were asked the rationale behind the decision, but none of the Defendants gave Coach Devoe an answer.

77.     Then, on October 30, 2020, Provost Epstein announced a formal investigation into the "serious concerns about interactions between Coach Devoe and numerous lacrosse team members during and immediately after the weekend of October 17th," which was to be conducted by a law firm. Amherst College lumped Coach Devoe into this skewed investigation. Yet most of

(and possibly all of) the players refused to show up to or participate in the investigation. Upon information and belief, only Coach Devoe contributed.

78.     To make matters worse, and further undermine Coach Devoe and the mission for which he was hired, Amherst College drastically limited and restricted Coach Devoe's communications with the team during the investigation, only allowing eight practices with the ten freshman players living on campus in November 2020.

79.     In the midst of the investigation, a rumor began to circulate that, while Coach Devoe was on campus one evening, Coach Devoe allegedly stated to one of the male players: "there are some fine sistas on campus, you can have a late night snack if you want." Coach Devoe has consistently denied this unsubstantiated accusation and maintains that he has never made this statement. Nonetheless, without revealing any credible source or any of the players allegedly with Coach Devoe when the alleged comment was made, Amherst College decided to target Coach Devoe.

80.     By February 9, 2021, the investigation had concluded, and Coach Devoe met with Provost Epstein and Faulstick to discuss the results. Despite the fact that McBride originally alerted Coach Devoe about the unauthorized and illegal practice and that Don Faulstick, Amherst College's Athletic Director, seemingly shared McBride's and Coach Devoe's concerns, Provost Epstein dismissed the unauthorized practice as friends hanging out together, once again essentially stating, "boys will be boys." Provost Epstein also stated that McBride must have "overreacted" to what he saw on the field that day—despite it being a violation of both the schools' purported policies and other regulations.

81.     As usual, instead of disciplining the bad actors, Amherst College chose to continue focusing on further undermining Coach Devoe, his authority, credibility, and ability to accomplish the mission for which he was originally hired by Amherst College.

82.     Despite being cleared of any wrongdoing by the investigators, Provost Epstein informed Coach Devoe that he would have to complete a sexual respect course, a trust building course, and a mandatory therapy course disguised as executive coaching.

83.     On February 10, 2021, Coach Devoe again met with Provost Epstein, and Faulstick. Provost Epstein's disdain for Coach Devoe was palpable and she refused to discuss any issues regarding player discipline.

84.     Whatever remaining authority Coach Devoe had as Head Coach up to that point was destroyed when Provost Epstein sent an email to the team on February 12, 2021, citing "troubling interactions between the team and the coach," "allegations of possible policy violations," and "significant lack of trust between the players and the coach." Provost Epstein failed to clarify what policy violations arose, but students were free to infer that Coach Devoe violated policy because Amherst College never formally punished the players for their unauthorized and illegal practice or any other bad behavior.

85.     In keeping with its history of discriminatory and intolerant behavior, Amherst College again tried silencing and even punishing the victim, while handling the perpetrators (and their parent donors) with velvet gloves. Instead of targeting the cancer within the program, Amherst College targeted Coach Devoe and resumed its acquiescence to Amherst College status quo.

86.     On March 5, 2021, a known media reporter wrote an unfavorable opinion calling Coach Devoe, among other things, unqualified, uneducated, unable to understand wealthy New

England kids, not a truth seeker, and underserving of a position at Amherst College. Rather than defending Coach Devoe, its choice to hire Coach Devoe, or the future of Coach Devoe's lacrosse program, Amherst College remained silent and instructed Coach Devoe to do the same.

87.    On March 10, 2021, Coach Devoe received an email from Ashani Petrizzi, the Senior Development Officer of Leadership Giving, about recruiting a major donor's son to play on the lacrosse team. Coach Devoe felt pressured to recruit this player due to financial advancement. Coach Devoe notified Faulstick about what was transpiring. Faulstick told Coach Devoe he did not have to worry about recruiting the major donor's son. However, Faulstick would later personally take over the recruitment of that donor's son.

88.    Amherst College would go on to silence Coach Devoe from expressing his opinions on recruiting players and not allow him to discipline players, cut players who failed to follow team rules, communicate with players, hire his staff, raise money for the lacrosse program, or communicate with alumni.

89.    Coach Devoe was effectively discharged from his duties as Head Coach. This was especially odd because, on March 22, 2021, Faulstick commended Coach Devoe with positive feedback, specifically about the direction of the program and prospective recruits.

90.    By early May 2021, Amherst College's undermining of Coach Devoe further resulted in the players refusing to show-up for mandatory team meetings. Amherst College refused to allow Coach Devoe to address the issue and refused to discipline the players itself.

91.    Amherst College betrayed Coach Devoe and betrayed the mission for which he was hired. All the while, Amherst College feigned interest in "mental health"—but ignored the fact that it was traumatizing Coach Devoe to the point that he sought professional help to address the severe emotional distress he was suffering at the hands of Defendants.

**E.      When Coach Devoe Reported Yet Another Incident of Racial Discrimination, Amherst College Escalated its Retaliation.**

92.     On May 14, 2021, Coach Devoe had lunch with a black lacrosse player, who confided in Coach Devoe that he and two black basketball players were told that they could not attend a lacrosse party because they would "take all the white women" at the party. On May 17, 2021, Coach Devoe informed Faulstick of the racial profiling and discrimination.

93.     On May 19, 2021, and following up on May 25, 2021, Angie Tissi-Gassoway, Associate Dean of Students for Diversity & Inclusion, emailed Coach Devoe to purportedly begin an investigation regarding his complaint of "identity-based harm" and the treatment "against black athletes on [Coach Devoe's] team because of their race."

94.     Coach Devoe responded on May 27, 2021, alerting Tissi-Gassoway that—although he would cooperate in any legitimate investigation—he could not, in good conscience, permit the black student athletes to be involved in another skewed investigation that, in his experience, would result in Amherst College retaliating against the victims and coddling the culprits.

95.     Coach Devoe also explained: "The acts I have witnessed from members of the Amherst College lacrosse community since becoming the Head Coach has me truly worried about the safety of the students and myself from being retaliated against." He explained his fear that "investigating racial bias" would trigger the lacrosse program and some of its supporters "to attack the students involved and myself." Coach Devoe closed by stating: "I hope we can work together to identify another solution to rectify this issue *because to even write this to you has me in fear of some type of retaliation or repercussion*." (emphasis added)

96.     On June 9, 2021, Faulstick pressured Coach Devoe to name the three black student athletes who were not allowed into the lacrosse party. Coach Devoe only agreed to do so if Amherst College would protect the three players and himself from retaliation and continued discrimination.

97.     Notably, Faulstick would not or could not provide those assurances.

98.     On June 10, 2021, Amherst College, through Dr. Epstein, wrongfully terminated Coach Devoe. Dr. Epstein informed Coach Devoe that Amherst College terminated him for refusing to participate in the investigation of discrimination and racial profiling against the three black students.

99.     This was false and a pretext for discrimination and retaliation because it was Coach Devoe who brought the issues to Defendants' attention and Coach Devoe repeatedly stated that he wanted to participate in the investigation and ensure the students were not retaliated against as he had been. When terminated, Dr. Epstein told Coach Devoe that Amherst College would not settle any claims with him if he spoke to the media.

100.    Despite the betrayals, discrimination, and retaliation, Coach Devoe asked Amherst College to reinstate him to permit him to continue his mission with the College's full support—as Amherst College originally had promised him. This, the College decided it would not do.

101.    As a result of Defendants' wrongful acts and omissions, Coach Devoe has suffered greatly—financially, in his chosen career, and personally.

## V.      CLAIMS FOR RELIEF

102.    Coach Devoe incorporates by reference each and every allegation contained in all of the paragraphs above, as if fully set forth herein.

103.    Based on the allegations above and below, Coach Devoe pleads each of the following causes of action separately, collectively, and/or in the alternative.

## A.      COUNT 1: Violation of 42 U.S.C. § 1981 (against All Defendants)

104.    Coach Devoe incorporates by reference each and every allegation contained in all of the paragraphs above, as if fully set forth herein.

105.    Coach Devoe, an African American, is a member of a racial minority.

106.    Provost Epsteon, and Faulstick had supervisory authority over Coach Devoe.

107.    As described above, Defendants discriminated against Coach Devoe on the basis of his race and retaliated against him for opposing discriminatory practices and conduct.

108.    The discrimination and retaliation implicated one or more activities enumerated in the statute, including, without limitation, the performance of Coach Devoe's agreements concerning his employment with Amherst College.

109.    Coach Devoe performed his job at a level that rules out the possibility that he was fired for job performance. For example, on March 22, 2021, Faulstick commended Coach Devoe for the direction of the lacrosse program and prospective recruits.

110.    As discussed above, Defendants treated Coach Devoe differently from other coaches, not in his protected class. For example, Amherst College interfered with and undermined Coach Devoe from expressing his opinions on recruiting players, disciplining players, cutting players who failed to follow rules, communicating with players, hiring his staff, raising money for the lacrosse program, and/or communicating with alumni or donors. Coach Devoe was discharged

from his duties as Head Coach because of his race and in retaliation for engaging in protected activity.

111.    In addition, Defendants tried to force Coach Devoe to participate in another tilted, skewed, racist, oppressive, and/or hostile investigation after he complained of discrimination and racial profiling. Among other things, Coach Devoe would be treated more harshly than his white counterparts. On June 10, 2021, Amherst College, through Provost Epstein, terminated Coach Devoe's employment.

112.    As further described above, Defendants, including Provost Epstein and Faulstick, are liable for the discrimination and retaliation against Devoe in violation of 42 U.S.C. § 1981.

113.    As a direct and/or proximate result of, among other things, the above-referenced wrongful acts and/or omissions, Coach Devoe has suffered and will continue to suffer damages, including, without limitation, damages to physical well-being, emotional and psychological distress, loss of career opportunities, past and future economic injuries (including back and front pay), reputational damages, and other compensatory, general, and/or consequential damages.

114.    Pursuant to 42 U.S.C. § 1981a, Coach Devoe is entitled to recover punitive damages in connection with this action.

115.    Pursuant to 42 U.S.C. §§ 1981 and 1988, Coach Devoe is entitled to recover his reasonable attorney's fees as part of the costs incurred in connection with this action.

## B.    COUNT 2: Fraud and/or Fraudulent Inducement (against Amherst College, Provost Epstein, and Faulstick)

116.    Coach Devoe incorporates by reference each and every allegation contained in all of the paragraphs above, as if fully set forth herein.

117.    As delineated in further detail above, Amherst College, Provost Epstein, and Faulstick made false representations of material fact and/or omissions with knowledge of their

falsity for the purpose of inducing Coach Devoe to agree to become Amherst College's Men's Head Lacrosse Coach. Among other things, the representations included:

(a)    On April 21, 2020, Faulstick promised and/or represented to Coach Devoe that Amherst College wanted Coach Devoe to (1) change the "frat-like" culture of its program; (2) integrate the team with more well-rounded students that "fit the campus better;" and (3) recruit students of color.

(b)    On April 21, 2020, Faulstick promised and/or represented to Coach Devoe that Amherst College would provide Coach Devoe with the resources and support he needed to accomplish these goals, including, without limitation, the authority to recruit players, enforce rules, and discipline players.

(c)    On May 2, 2020, Faulstick reiterated such promises and representations, and promised and/or represented to Coach Devoe that Amherst College seriously intended to change the culture of the lacrosse program.

(d)    On May 6, 2020, President Martin promised and/or represented to Coach Devoe that Amherst College wanted to recruit more diverse players and instill values into the men's lacrosse program that would prevent the negative incidents from the past, including, without limitation, the authority to recruit players and enforce the rules.

(e)    On May 6, 2020, President Martin promised and/or represented to Coach Devoe that he would have the full support of the College to change the culture of the team, including the authority to recruit players and enforce the rules.

(f)    On May 19, 2020, Provost Epstein promised and/or represented to Coach Devoe that she would work with Coach Devoe to change the culture of the lacrosse program.

(g)    On May 22, 2020, Faulstick confirmed to Coach Devoe that, if Coach Devoe took the head coach position, Coach Devoe could hire his own coaching staff.

118.    As delineated in more detail above, at the time Defendants made the above-referenced representations and/or omission, they knew they were false or made them with a reckless indifference to their truth or falsity.

119.    Among other things, Defendants intended to deceive Coach Devoe and lure him to Amherst College, making him believe that the representations were true. But, for example, Amherst College's pattern, practice, course of conduct, acts, and omissions show the opposite. In addition, and/or the alternative, the false statements of fact and/or omissions that Amherst College,

Provost Epstein, and Faulstick made were susceptible of actual knowledge and they made the statements as of their own knowledge.

120.    Coach Devoe reasonably relied upon Amherst College's, Provost Epstein's, and Faulstick's representations as true and, as a result, among other things, relinquished his then-current position as Head Coach of the Men's Lacrosse Team at Division I Hampton University in Virginia, took the position at Amherst College, and relocated his family to Massachusetts. Coach Devoe would not have taken these actions, among others, had he known of the falsity of the Defendants' representations. As delineated in more detail above, Defendants' acts and/or omissions showed that their representations were false.

121.    As a direct and/or proximate result of, among other things, the above-referenced fraudulent acts and/or omissions, Coach Devoe has suffered and will continue to suffer damages, including, without limitation, damages to physical well-being, emotional and psychological distress, loss of career opportunities, past and future economic injuries (including back and front pay), reputational damages, and other direct, compensatory, reliance, and/or consequential damages.

**C.    COUNT 3: Negligent Misrepresentation (against Amherst College, Provost Epstein, and Faulstick)**

122.    Coach Devoe incorporates by reference each and every allegation contained in all of the paragraphs above, as if fully set forth herein.

123.    As delineated in further detail above, Amherst College, Provost Epstein, and Faulstick made misrepresentations and/or omissions negligently, without exercising reasonable care to determine their truth or falsity, or in bad faith, for the purpose of inducing Coach Devoe to agree to become Amherst College's Men's Head Lacrosse Coach. Among other things, the representations included:

(a)    On April 21, 2020, Faulstick promised and/or represented to Coach Devoe that Amherst College wanted Coach Devoe to (1) change the "frat-like" culture of its program; (2) integrate the team with more well-rounded students that "fit the campus better;" and (3) recruit students of color.

(b)    On April 21, 2020, Faulstick promised and/or represented to Coach Devoe that Amherst College would provide Coach Devoe with the resources and support he needed to accomplish these goals, including, without limitation, the authority to recruit players, enforce rules, and discipline players.

(c)    On May 2, 2020, Faulstick reiterated such promises and representations, and promised and/or represented to Coach Devoe that Amherst College seriously intended to change the culture of the lacrosse program.

(d)    On May 6, 2020, President Martin promised and/or represented to Coach Devoe that Amherst College wanted to recruit more diverse players and instill values into the men's lacrosse program that would prevent the negative incidents from the past, including, without limitation, the authority to recruit players and enforce the rules.

(e)    On May 6, 2020, President Martin promised and/or represented to Coach Devoe that he would have the full support of the College to change the culture of the team, including the authority to recruit players and enforce the rules.

(f)    On May 19, 2020, Provost Epstein promised and/or represented to Coach Devoe that she would work with Coach Devoe to change the culture of the lacrosse program.

(g)    On May 22, 2020, Faulstick confirmed to Coach Devoe that, if Coach Devoe took the head coach position, Coach Devoe could hire his own coaching staff.

124.   Coach Devoe reasonably relied upon Amherst College's, Provost Epstein's, and Faulstick representations as true and, as a result, among other things, relinquished his then-current position as Head Coach of the Men's Lacrosse Team at Division I Hampton University in Virginia, took the position at Amherst College, and moved his family to Massachusetts. Coach Devoe would not have taken these actions, among others, had he known of the falsity of the Defendants' representations. As delineated in more detail above, Defendants' acts and/or omissions showed that their representations were false.

125.   As a direct and/or proximate result of, among other things, the above-referenced acts and/or omissions, Coach Devoe has suffered and will continue to suffer damages, including,

without limitation, damages to physical well-being, emotional and psychological distress, loss of career opportunities, past and future economic injuries (including back and front pay), reputational damages, and other direct, compensatory, reliance, and/or consequential damages.

**D.    COUNT 4: Intentional Infliction of Emotional Distress (against Amherst College, Provost Epstein, and Faulstick)**

126.    Coach Devoe incorporates by reference each and every allegation contained in all of the paragraphs above, as if fully set forth herein.

127.    Defendants' conduct, as described above, caused Coach Devoe mental anguish and emotional distress. Coach Devoe's mental anguish and emotional distress were severe enough that they might result in bodily harm or illness.

128.    Instead of supporting Coach Devoe, among other things, Defendants ignored Coach Devoe's pleas for help, subjected him to more abuse, and eventually terminated him. Because Defendants knew how their actions affected Devoe, but continued to abuse him, Defendants must have intended to inflict emotional distress or should have known that emotional distress was the likely result of their conduct.

129.    Defendants' conduct caused Coach Devoe severe and substantial mental anguish and emotional distress, as discussed above. Defendants' conduct was extreme and outrageous, beyond the bounds of decency, and utterly intolerable in a civilized community. Coach Devoe's emotional distress, suffered at the hands of Defendants, was severe and of a nature that no reasonable person could be expected to endure.

130.    As a direct and/or proximate result of, among other things, the above-referenced wrongful acts and/or omissions, Coach Devoe has suffered and will continue to suffer damages, including, without limitation, damages to physical well-being, emotional and psychological

distress, loss of career opportunities, past and future economic injuries, reputational damages, and other direct, compensatory, and/or consequential damages.

**E.**   **COUNTS 5: Negligent Infliction of Emotional Distress (against Amherst College, Provost Epstein, and Faulstick)**

131.   Coach Devoe incorporates by reference each and every allegation contained in all of the paragraphs above, as if fully set forth herein.

132.   Defendants' conduct, as described above, caused Coach Devoe mental anguish and emotional distress. Under the circumstances described above, a reasonable person would have suffered emotional distress. Coach Devoe's mental anguish and emotional distress were severe enough that they might result in bodily harm or illness.

133.   Coach Devoe suffered physical harm manifested by objective symptomatology.

134.   Instead of supporting Coach Devoe, among other things, Defendants negligently ignored Coach Devoe's pleas for help, subjected him to more abuse, and eventually terminated him. Defendants' conduct caused Coach Devoe severe and substantial mental anguish and emotional distress, as discussed above.

135.   As a result of, among other things, the above-referenced wrongful acts and/or omissions, Coach Devoe has suffered and will continue to suffer damages, including, without limitation, damages to physical well-being, emotional and psychological distress, loss of career opportunities, past and future economic injuries (including back and front pay), reputational damages, and other direct, compensatory, and/or consequential damages.

**F.**   **COUNT 6: Breach of Contract (against Amherst College)**

136.   Coach Devoe incorporates by reference each and every allegation contained in all of the paragraphs above, as if fully set forth herein.

137.     Based on the aforementioned facts, circumstances, and course of conduct, Amherst College breached its agreements with Coach Devoe.

138.     For example, in their written agreement dated May 22, 2020, among other things, Amherst College agreed that Coach Devoe would take on the position of Head Coach of Men's Lacrosse and Physical Education Instructor at Amherst College, where his appointment began on June 1, 2020, with an initial annual salary of $90,000, $375 per month for a housing subsidy, and eligibility for $1,500 in annual travel and professional development support and extended through June 30, 2023. Pending positive reappointments in the Spring 2023, Spring 2026, and Spring 2029, Coach Devoe would be promoted to Senior Coach status on July 1, 2032.

139.     Coach Devoe performed under his agreement with Amherst College, for which there was valid consideration, and/or Coach Devoe met conditions precedent.

140.     Nevertheless, Amherst College breached the agreement, among other things, by terminating the agreement and Coach Devoe's employment two years early on June 10, 2021.

141.     As a direct and/or proximate result of, among other things, Amherst College's breaches, Coach Devoe has suffered and will continue to suffer damages, including, without limitation, being wrongfully deprived of the benefits of the bargain, and compensatory, general, and/or consequential damages.

## G.     COUNT 7: Breach of Covenant of Good Faith and Fair Dealing (against Amherst College)

142.     Coach Devoe incorporates by reference each and every allegation contained in all of the paragraphs above, as if fully set forth herein.

143.     The agreement between Coach Devoe and Amherst includes an implied covenant of good faith and fair dealing. Nevertheless, Amherst College breached the agreement, among other things, by:

(a)     wrongfully terminating Coach Devoe two years early on June 10, 2021;

(b)     not allowing Coach Devoe to hire his own staff;

(c)     undermining Coach Devoe's efforts to, among other things: (1) recruit more culturally diverse players; (2) instill values into the men's lacrosse program that would prevent the negative incidents from the past; (3) change the "frat-like" culture of its program; and (4) recruit students of color;

(d)     not providing Coach Devoe with the resources and full support he needed to accomplish these goals, including, without limitation, the authority to recruit players, enforce rules, and discipline players;

(e)     interfering with and undermining Coach Devoe in his dealings with players, their parents, alumni, and/or donors, in his efforts to enforce rules and discipline players, recruit player, hire his staff, and otherwise accomplish the mission for which he was hired;

(f)     not following the policies, procedures, and guidelines provided in the Amherst College Staff Handbook; and

(g)     pressuring Coach Devoe to recruit players from current and/or prospective major financial donors to the College.

144.    As a direct and/or proximate result of, among other things, Amherst College's breaches, Coach Devoe has suffered and will continue to suffer damages, including, without limitation, being wrongfully deprived of the benefits of the bargain, and compensatory, general, and/or consequential damages.

## H.     COUNT 8: Promissory Estoppel and/or Equitable Estoppel (against Amherst College, Provost Epstein, and Faulstick)

145.    Coach Devoe incorporates by reference each and every allegation contained in all of the paragraphs above, as if fully set forth herein.

146.    As delineated in more detail above, Defendants: (1) made representations intended to induce a course of conduct on the part of Coach Devoe; (2) acted and/or omitted to act with regard to the representations made to Coach Devoe; and (3) Coach Devoe has suffered greatly as a consequence of such acts and/or omissions.

147.    For example, Defendants' representations and promises, and/or the school's policies, should have been reasonably expected to induce action or forbearance by Coach Devoe. Among other things, Defendants expected or should have expected that Coach Devoe would agree to become Amherst College's Men's Head Lacrosse Coach, and relinquish his position at Hampton University and/or not pursue employment at other colleges, based on the express and implied promises that Defendants made. Coach Devoe relied to his detriment on such express and implied promises and representations. Therefore, Defendants are liable to Coach Devoe based on estoppel.

148.    As delineated in further detail above, Amherst College, Provost Epstein, and Faulstick made promises and representations and/or omissions to induce Coach Devoe to agree to become Amherst College's Men's Head Lacrosse Coach. Among other things, the promises and representations included:

(a)    On April 21, 2020, Faulstick promised and/or represented to Coach Devoe that Amherst College wanted Coach Devoe to (1) change the "frat-like" culture of its program; (2) integrate the team with more well-rounded students that "fit the campus better;" and (3) recruit students of color.

(b)    On April 21, 2020, Faulstick promised and/or represented to Coach Devoe that Amherst College would provide Coach Devoe with the resources and support he needed to accomplish these goals, including, without limitation, the authority to recruit players, enforce rules, and discipline players.

(c)    On May 2, 2020, Faulstick reiterated such promises and representations, and promised and/or represented to Coach Devoe that Amherst College seriously intended to change the culture of the lacrosse program.

(d)    On May 6, 2020, President Martin promised and/or represented to Coach Devoe that Amherst College wanted to recruit more diverse players and instill values into the men's lacrosse program that would prevent the negative incidents from the past, including, without limitation, the authority to recruit players and enforce rules.

(e)    On May 6, 2020, President Martin promised and/or represented to Coach Devoe that he would have the full support of the College to change the culture of the team, including the authority to recruit players and enforce rules.

(f)     On May 19, 2020, Provost Epstein promised and/or represented to Coach Devoe that she would work with Coach Devoe to change the culture of the lacrosse program.

(g)     On May 22, 2020, Faulstick confirmed to Coach Devoe that, if Coach Devoe took the head coach position, Coach Devoe could hire his own coaching staff.

149.   As delineated in more detail above, Defendants made the above-referenced representations and/or omission to induce Coach Devoe to agree to become Amherst College's Men's Head Lacrosse Coach, which led to Coach Devoe's detriment, including, without limitation, foregoing his employment at Hampton University and moving to Massachusetts. Coach Devoe reasonably relied upon the promises and/or representations of Amherst College, Provost Epstein, and Faulstick, and suffered a detriment as a consequence of his acceptance of the position as the Amherst Head Coach of the Men's Lacrosse Team.

150.   As a direct and/or proximate result of, among other things, Amherst College's wrongful acts and/or omissions, Coach Devoe has suffered and will continue to suffer damages, including, without limitation, emotional and psychological distress, loss of career opportunities, past and future economic injuries (including front and back pain), reputational damages, and other compensatory, general, and/or consequential damages.

I.     **COUNT 9: Violation of Coach Devoe's Right of Publicity (against Amherst College)**

151.   Coach Devoe incorporates by reference each and every allegation contained in all of the paragraphs above, as if fully set forth herein.

152.   Amherst College violated Massachusetts' Right of Publicity law, Chapter 214, § 3A of the General Laws, when it used Coach Devoe's name and image to promote the false perception that Amherst College intended to address its documented complicity for racial intolerance on its campus.

153.    Amherst College used Coach Devoe's name and image for trade purposes and in an effort to, for example, clean up the school's reputation, attract more students, and generate more tuition by enrolling students.

154.    Coach Devoe never consented to having his name and image appropriated for Amherst College's fraudulent benefit. Amherst College's public promotions/campaign, using Coach Devoe's name and image to clean up the school's racist and elitist image and generate more tuition/enrollment, and its subsequent wrongful acts, omissions, and termination of Coach Devoe, have caused Coach Devoe damages, including to his reputation.

155.    As a direct and/or proximate result, Coach Devoe has suffered and will continue to suffer damages, including, without limitation, damages to physical well-being, emotional and psychological distress, loss of career opportunities, past and future economic injuries (including front and back pay), reputational damages, and other direct, compensatory, and/or consequential damages.

156.    Because Amherst College knowingly and intentionally exploited the value of Coach Devoe's identity, it violated Coach Devoe's right of publicity. Pursuant to M.G.L.A. 214 § 3A, Coach Devoe is also entitled to treble damages in connection with this action.

**J.      COUNT 10: Civil Conspiracy and/or Aiding and Abetting (against Amherst College, Provost Epstein, Faulstick, and Does 1 through 25)**

157.    Coach Devoe incorporates by reference each and every allegation contained in all of the paragraphs above, as if fully set forth herein.

158.    Defendants conspired with each other and with others (John Does) to unlawfully commit the acts for which Coach Devoe has suffered damages as referenced in Counts 2, 3, 4, and 5. As described in more detail above, there has been (1) a combination of two or more persons acting in furtherance of a common design or agreement to commit an unlawful act, or to commit

a lawful act by unlawful means, and (2) an overt act that results in damages. Given their positions and the course of conduct described above, Defendants, acted in unison and/or had a particular power of coercion over Coach Devoe that they would not have had if they had been acting independently. In addition and/or the alternative, there is joint liability because there was a common design or an agreement, although not necessarily express, between two or more persons to do a wrongful act, and there is proof of the wrongful acts and/or omissions described above in furtherance of the agreement.

159.     Therefore, Defendants are jointly and severally liable for their civil conspiracy and/or aiding and abetting.

160.     As a direct and/or proximate result of, among other things, this civil conspiracy, Coach Devoe has suffered and will continue to suffer damages, including, without limitation, emotional and psychological distress, loss of career opportunities, past and future economic injuries (including front and back pay), reputational damages, and other compensatory, general, and/or consequential damages.

## K.     COUNT 11: Negligence (against Amherst College)

161.     Coach Devoe incorporates by reference each and every allegation contained in all of the paragraphs above, as if fully set forth herein.

162.     Based on the aforementioned facts, circumstances, and course of conduct, (1) Amherst College owed a duty to Coach Devoe, (2) Amherst College breached that duty, and (3) a causal connection exists between the breach of duty and Coach Devoe's suffering of damages.

163.     Amherst College breached its duties of care to Coach Devoe, among other things, by negligently:

(a)     terminating Coach Devoe;

(b)     undermining Coach Devoe's efforts to, among other things: (1) recruit more culturally diverse players; (2) instill values into the men's lacrosse program that would prevent the negative incidents from the past; (3) change the "frat-like" culture of its program; and (4) recruit students of color;

(c)     not providing Coach Devoe with the resources and full support he needed to accomplish these goals, including, without limitation, the authority to recruit players, enforce rules, and discipline players;

(d)     interfering with and undermining Coach Devoe in his dealings with players, their parents, alumni, and/or donors, in his efforts to enforce rules and discipline players, recruit player, hire his staff, and otherwise accomplish the mission for which he was hired;

(e)     not following the policies, procedures, and guidelines provided in the Amherst College Staff Handbook; and

(f)     pressuring Coach Devoe to recruit players from current and prospective major financial donors to the College.

164.    Among other things, Amherst College owed Coach Devoe a duty to conduct any disciplinary proceedings with basic fairness. Defendants also owed a duty of care to ensure that proceedings against Coach Devoe were conducted in good faith and with basic fairness before he was summarily terminated by Amherst College. As delineated in further detail above, Amherst College did not conduct any proceeding with basic fairness before it terminated Coach Devoe.

165.    Amherst College also negligently breached the duty to provide basic fairness when, among other things, it reached outcomes that were unfair, irrational, and/or tainted by bias. Among other things, Amherst College negligently never offered Coach Devoe the opportunity to review the evidence. In addition and/or the alternative, Coach Devoe was forced to participate in an investigation without access to the evidence that Amherst College and/or its counsel gathered. Moreover, Amherst College negligently presumed Coach Devoe guilty, operating from the assumption that he was responsible for some wrongful conduct, and negligently terminated him.

166.    In fact, as described in more detail above, even before then, Amherst College negligently and effectively discharged Coach Devoe from his duties as Head Coach. This was especially odd because, on March 22, 2021, Faulstick commended Coach Devoe with positive feedback, specifically about the direction of the program and prospective recruits. Nonetheless, Amherst College negligently went on to silence Coach Devoe from expressing his opinions on recruiting players and also negligently would not allow him to discipline players, cut players who failed to follow team rules, communicate with players, hire his staff, raise money for the lacrosse program, and or communicate with alumni.

167.    In addition, Amherst College negligently drafted, circulated, and/or enforced its school policies, procedures, guidelines, rules, and/or codes. In conducting its investigation and determination of any allegations against Coach Devoe, or adverse determinations regarding Coach Devoe's job duties, authority and, ultimately, termination, Amherst College owed a common law duty to exercise reasonable care, with due regard for uncovering the truth, applying Amherst College's policies and process fairly and impartially, appreciating the severity of the allegations and/or circumstances and potential consequences, and in consideration of Coach Devoe's fundamental rights to a fair process. In addition and/or the alternative, Amherst College negligently trained and supervised the individuals it employs to serve as supervisors, investigators, and/or adjudicators in disciplinary proceedings, making them unfit to serve in these critical roles. Among other things, it punished Coach Devoe for trying to enforce the rules Amherst College required him to enforce and did not properly discipline the very persons that violated those rules. At a minimum, a non-negligent higher education institution conducting a disciplinary proceeding would have ensured that its personnel were thoroughly familiar with the rights that its own policies,

procedures, and guidelines provided, and were capable of carrying them out in a fair and impartial manner to ensure a correct outcome.

168.    Accordingly, Amherst College is liable to Coach Devoe for its negligence.

169.    As a direct and/or proximate result of, among other things, Amherst College's negligent acts and/or omissions, Coach Devoe has suffered and will continue to suffer damages, including, without limitation, emotional and psychological distress, loss of career opportunities, past and future economic injuries (including back and front pay), reputational damages, and/or other compensatory, general, and/or consequential damages.

## VI.    **RESPONDEAT SUPERIOR**

170.    In addition and/or the alternative to the allegations and claims above, whenever it is alleged in this pleading that Amherst College did anything, or failed to do anything, it is meant that such conduct was done by Amherst College employees, contractors, principals, agents, and/or representatives, in the scope of their authority, or ratified by Amherst College, or done with such apparent authority so as to cause Plaintiff to reasonably and justifiably rely that such conduct was within the scope of their authority. Amherst College is vicariously liable for the conduct of its employees, contractors, principals, agents, and/or representatives, by virtue of the doctrines of respondeat superior, agency, apparent authority, ostensible agency, ratification, and/or estoppel.

## VII.    **JURY DEMAND**

171.    Plaintiff demands that this Court empanel a lawful jury to hear this case.

## VIII.    **RESERVATION OF RIGHTS**

172.    Plaintiff reserves the right to bring additional claims and causes of action against Defendants and others, and to amend this pleading as necessary.

## IX.     PRAYER FOR RELIEF

WHEREFORE, for the foregoing reasons, Plaintiff Rashad Devoe demands judgment against Defendants as follows:

(i)        On COUNT 1: Violation of 42 U.S.C. § 1981 (against Amherst College, Provost Epstein, and Faulstick), a judgment awarding Plaintiff damages against Defendants, each independently and/or jointly and severally, in an amount determined at trial, including, without limitation, damages to physical well-being, emotional and psychological distress, loss of career opportunities, past and future economic injuries (including back and front pay), reputational damages, and other compensatory, general, and/or consequential damages, plus pre- and post-judgment interest, attorneys' fees, multiple/punitive/exemplary damages, expenses, costs, and disbursements, and enter an injunction enjoining enforcement of Plaintiff's termination from Amherst College, enter an order reinstating Plaintiff's employment with Amherst College, and requiring Amherst College to destroy all disciplinary records concerning Plaintiff;

(ii)       On COUNT 2: Fraud and/or Fraudulent Inducement (against Amherst College, Provost Epstein, and Faulstick), a judgment awarding Plaintiff damages against Defendants in an amount determined at trial, including, without limitation, damages to physical well-being, emotional and psychological distress, loss of career opportunities, past and future economic injuries (including front and back pay), reputational damages, and other compensatory, general, and/or consequential damages, plus pre- and post-judgment interest, civil penalties, expenses, costs, and disbursements;

(iii)      On COUNT 3: Negligent Misrepresentation (against Amherst College, Provost Epstein, and Faulstick), a judgment awarding Plaintiff damages against Defendants in an amount determined at trial, including, without limitation, damages to physical well-being, emotional and psychological distress, loss of career opportunities, past and future economic injuries (including

front and back pay), reputational damages, and other compensatory, general, and/or consequential

damages, plus pre- and post-judgment interest, expenses, costs, and disbursements;

(iv)    On COUNT 4: Intentional Infliction of Emotional Distress (against Amherst

College, Provost Epstein, and Faulstick), a judgment awarding Plaintiff damages against

Defendants in an amount determined at trial, including, without limitation, damages to physical

well-being, emotional and psychological distress, loss of career opportunities, past and future

economic injuries (including front and back pay), reputational damages, and other compensatory,

general, and/or consequential damages, plus pre- and post-judgment interest, expenses, costs, and

disbursements;

(v)    On COUNT 5: Negligent Infliction of Emotional Distress (against Amherst

College, Provost Epstein, and Faulstick), a judgment awarding Plaintiff damages against

Defendants in an amount determined at trial, including, without limitation, damages to physical

well-being, emotional and psychological distress, loss of career opportunities, past and future

economic injuries (including front and back pay), reputational damages, and other compensatory,

general, and/or consequential damages, plus pre- and post-judgment interest, expenses, costs, and

disbursements;

(vi)    On COUNT 6: Breach of Contract (against Amherst College), a judgment awarding

Plaintiff damages against Amherst College in an amount determined at trial, including, without

limitation, loss of career opportunities, past and future economic injuries, and other compensatory,

general, and/or consequential damages, plus pre- and post-judgment interest, expenses, costs, and

disbursements;

(vii)    On COUNT 7: Breach of Covenant of Good Faith and Fair Dealing (against

Amherst College), a judgment awarding Plaintiff damages against Amherst College in an amount

determined at trial, including, without limitation, loss of career opportunities, past and future economic injuries (including front and back pay), and other compensatory, general, and/or consequential damages, plus pre- and post-judgment interest, expenses, costs, and disbursements;

(viii)     On COUNT 8: Promissory Estoppel and/or Equitable Estoppel (against Amherst College, Provost Epstein, and Faulstick), a judgment awarding Plaintiff damages against Defendants in an amount determined at trial, including, without limitation, damages to physical well-being, emotional and psychological distress, loss of career opportunities, past and future economic injuries (including front and back pay), reputational damages, and other compensatory, general, and/or consequential damages, plus pre- and post-judgment interest, expenses, costs, and disbursements;

(ix)     On COUNT 9: Violation of Coach Devoe's Right of Publicity (against Amherst College), a judgment awarding Plaintiff damages against Amherst College in an amount determined at trial, including, without limitation, damages to physical well-being, emotional and psychological distress, loss of career opportunities, past and future economic injuries (including front and back pay), reputational damages, and other compensatory, general, and/or consequential damages, plus pre- and post-judgment interest, attorneys' fees, multiple/punitive/exemplary damages, expenses, costs, and disbursements;

(x)     On COUNT 10: Civil Conspiracy and/or Aiding and Abetting (against all Defendants), a judgment awarding Plaintiff damages against Defendants, each independently and/or jointly and severally,  in an amount determined at trial, including, without limitation, damages to physical well-being, emotional and psychological distress, loss of career opportunities, past and future economic injuries (including front and back pay), reputational damages, and other

compensatory, general, and/or consequential damages, plus pre- and post-judgment interest, expenses, costs, and disbursements;

(xi)     On COUNT 11: Negligence (against Amherst College), a judgment awarding Plaintiff damages against Amherst College in an amount determined at trial, including, without limitation, damages to physical well-being, emotional and psychological distress, loss of career opportunities, past and future economic injuries (including front and back pay), reputational damages, and other compensatory, general, and/or consequential damages, plus pre- and post-judgment interest, expenses, costs, and disbursements;

(xii)     a declaratory judgment, pursuant to 28 U.S.C. § 2201, declaring that: (i) the outcome and determinations made by Amherst College regarding Plaintiff's discipline or termination be reversed; (ii) Plaintiff's reputation be restored; (iii) Plaintiff's disciplinary record be expunged; (iv) the record of Plaintiff's termination be removed from his file; and (v) Plaintiff be reinstated to employment as Head Coach of Men's Lacrosse and Physical Education Instructor at Amherst College; and

(xiii)     Plaintiff be awarded such other and further relief as the Court deems just, equitable and proper.

Dated: Boston, Massachusetts
August 13, 2021

Respectfully submitted,

*Attorneys for Plaintiff Rashad Devoe*

By: /s/ *Shain Khoshbin*

MUNCK WILSON MANDALA, LLP

SHAIN A. KHOSHBIN (*pro hac vice* forthcoming)
MICHAEL A. MCCABE (*pro hac vice* forthcoming)
ALISON L. BATTISTE (*pro hac vice* forthcoming)
TASHA SCHWIKERT (*pro hac vice* forthcoming)
ANDREW F. RHODEN (*pro hac vice* forthcoming)
CLAYTON T. LYNN (*pro hac vice* forthcoming)
600 Banner Place Tower
12770 Coit Road
Dallas, TX 75251
Telephone: 972-628-3600
Telecopier: 972-628-3616
skhoshbin@munckwilson.com
mmccabe@munckwilson.com
abattiste@munckwilson.com
techwikert@munckwilson.com
arhoden@munckwilson.com
clynn@munckwilson.com

NESENOFF & MILTENBERG, LLP

By: /s/ *Tara J. Davis*

ANDREW T. MILTENBERG (*pro hac vice* forthcoming)
STUART BERNSTEIN (*pro hac vice* forthcoming)
TARA J. DAVIS (BBO No. 675346)
REGINA M. FEDERICO (BBO No. 700099)
101 Federal Street, 19th Floor
Boston, MA 02110
Telephone: 617-209-2188
Telecopier: 212-736-2260
amiltenberg@nmllplaw.com
sbernstein@nmllplaw.com
tdavis@nmllplaw.com
rfederico@nmllplaw.com